JAMES MAROS AND BESS MAROS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Maros v. Commissioner
Docket No. 39582-84.
United States Tax Court
T.C. Memo 1987-603; 1987 Tax Ct. Memo LEXIS 602; 54 T.C.M. (CCH) 1270; T.C.M. (RIA) 87603; December 8, 1987. Joseph D. Wolgel and Alan F. Segal, for the petitioners. William G. Merkel, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $ 5,713 and $ 478,727 in petitioner's Federal income taxes for 1979 and 1980, respectively. After concessions, the issue for determination is whether petitioners received taxable income of $ 689,055 during 1980 by reason of forgiveness of a debt owed to their wholly owned corporation. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners were residents of Hinsdale, Illinois, at the *603 time they filed their petition. They filed joint Federal income tax returns for 1979 and 1980. At all material times, petitioners owned 100 percent of the outstanding stock of Fran Suli, Inc., also known as Maros Management Company (the corporation). James Maros (Mr. Maros) was president and Bess Maros (Mrs. Maros) was corporate secretary of the corporation during the fiscal year ended June 30, 1980. Prior to the events in issue here, the corporation operated eight McDonald's restaurant franchises. During or prior to 1979, Mr. Maros became ill and petitioners began experiencing financial difficulties. Prior to 1979, the corporation was indebted to Continental Illinois National Bank and Trust Company of Chicago (Continental) in the amount of $ 2,115,193.78. The corporate debt was personally guaranteed by petitioners. On June 28, 1979, the Continental debt was restructured, with the corporation executing a new not in the amount of $ 1,980,200.18, also personally guaranteed by petitioners. As of April 1, 1980, the Continental loan was in default, with a principal balance outstanding of $ 1,827,162.54. Prior to 1979, petitioners were the beneficiaries of three land trusts. *604 The first trust related to petitioners' personal residence located at Maros Lane, Olympic Fields, Illinois (the residence). The residence was encumbered by an installment note dated May 1, 1975, payable to Ford City Bank. The outstanding balance on that encumbrance as of April 1, 1980, was $ 637,455.71. The second land trust related to real property located at 1515-1551 South Western Avenue, Chicago Heights, Illinois (the 1537 property). The 1537 property was encumbered by a note payable to Ford City Bank, the trustee, dated June 21, 1977, in the original amount of $ 313,700, and a note to Garfield Ridge Trust and Savings Bank, dated May 15, 1978, in the amount of $ 76,000. As of April 1, 1980, the balances outstanding on the notes encumbering the 1537 property were $ 301,897.63 owed to Ford City Bank and $ 40,011.50 owed to Garfield Ridge Trust and Savings Bank. The third land trust was administered by First National Bank in Chicago Heights with respect to a commercial building known as 1513-1515 South Western Avenue, Chicago Heights, Illinois (the 1515 property). The 1515 property was encumbered by a note dated July 15, 1977, payable to Michigan Avenue National Bank of *605 Chicago in the amount of $ 200,000. As of April 1, 1980, the principal balance outstanding on the note was $ 182,384.11. The cost of the residence was $ 2,160,000. It was unsuccessfully offered for sale at a price of $ 1,250,000 from March 1979 until February 11, 1980. The 1537 property had a cost to petitioners of $ 346,000, and the 1515 property had a cost to petitioners of $ 149,987. All of the properties were ultimately sold, after bankruptcy proceedings commenced by the corporation and by petitioners, at less than the original cost of each of the properties. The subsequent sales, however, did not reflect fair market value as of April 1, 1980. As of April 1, 1980, petitioners owed a total of $ 689,055 to the corporation as a result of corporate advances to petitioners' behalf. The balance of the debt was reflected by a loan receivable account on the corporation's books and records. No notes or other formal document was created with respect to the debt. In February 1980, petitioners consulted Burton Stern (Stern), an accountant and financial adviser, with respect to resolving their financial difficulties. At the suggestion of Stern, petitioners decided to pursue a *606 plan whereby all of their assets, including the three parcels of real property in which they had beneficial interests, would be transferred to the corporation to enable the corporation to borrow additional money from lending institutions. Stern met with representatives of McDonald's Corporation and Continental and obtained their concurrence in the plan. At Stern's direction, a journal entry was made on the corporate books as of April 1, 1980, recording as assets the three parcels of real property and as liabilities the remaining balances of the real property. Values recorded in the journal entry were $ 2,800,000 for the residence, $ 290,000 for the 1515 property and $ 330,000 for the 1537 property. In the same journal entry, a credit of $ 689,055 was recorded to the shareholders' loan account, thereby eliminating the balance in that account. After April 1, 1980, the corporate books and tax returns and the tax returns of petitioners were prepared consistent with transfer of the real properties to the corporation on April 1, 1980, and a cancellation of the shareholders' debt to the corporation as of that date. Petitioners did not, however, direct the trustees of the land trusts *607 to take the steps necessary to effectuate such a transfer, and no legal transfers of the beneficial interests in the real estate from petitioners to the corporation were accomplished. On June 17, 1981, the corporation filed a petition under Chapter 11 of the Bankruptcy Code. The beneficial interests in the land trusts were listed as assets, and the debts encumbering the land were listed as liabilities of the corporation in the bankruptcy petition. The corporate petition did not list any amount owing from petitioners to the corporation as an asset of the corporation. During the course of the corporate bankruptcy proceeding, a dispute arose concerning ownership of the real properties. Prior to May 31, 1983, the residence and the 1537 property were sold pursuant to orders of the bankruptcy court. On May 31, 1983, petitioners filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code. Because of a continuing controversy concerning ownership of the 1515 property, and in order to avoid an accusation of concealment of assets, petitioners' bankruptcy counsel listed the 1515 property as an asset of petitioners in their personal bankruptcy schedule. That property was ultimately *608 sold pursuant to orders in petitioners' personal bankruptcy case. The personal bankruptcy petition did not show any debt owing to the corporation as a liability of petitioners. ULTIMATE FINDINGS OF FACT Petitioners intended that their beneficial interests in the three parcels of real property subject to land trusts be transferred to the corporation as of April 1, 1980. No legal transfer occurred, however, by reason of their failure to execute necessary documents. Petitioners did not intend that their debt to the corporation be canceled absent transfer of their interests in real property to the corporation. Their debt to the corporation, therefore, was not discharged in 1980. OPINION Prior to and through the trial, the parties argued primarily about whether a transfer of the real properties from petitioners to the corporation had occurred and, if so, the fair market value of the properties at the time of the transfer. Respondent contended that, even if a transfer did take place, the value of the properties on April 1, 1980, was less than the encumbrances on them assumed by the corporation. Therefore, according to respondent, petitioners received income from cancellation *609 of indebtedness. See section 61(a)(12); [1]. Petitioners each testified at trial that they would not have written off their debt to the corporation without the transfer of properties to the corporation. They testified that the legal steps necessary to transfer were not taken because of Mr. Maros' health problems, their devotion of substantial time to the business, and the failure of the professionals on whom they relied to follow through with the necessary steps. Their testimony was credible, uncontroverted, and unimpeached. Thus, at the end of the trial, the Court expressed the tentative conclusion that the cancellation of indebtedness to the corporation was contingent on the transfer of properties, and that the transfer of properties did not occur. In their opening brief, petitioners concede that the real properties were not transferred to the corporation and argue that the cancellation of indebtedness was contingent on such transfer. Respondent argues that petitioners intended to cancel the *610 debt regardless of the transfers; he discounts petitioners' testimony as "self-serving." Respondent, however, relies on suspicion and speculation; his theory is not supported by the evidence. The evidence cited in support of the argument that the debt was discharged is the same as that showing an intent to transfer the properties to the corporation. There is inadequate reason in this record to reject petitioners' testimony. Their explanation of events is logical and consistent, and we believe them. We have found that petitioners did not intend that the debt be canceled unless the transfers occurred; thus cancellation of the debt was contingent on transfer of the properties. The debt was not canceled in 1980 because the transfers did not occur. [2]
There is insufficient evidence in the record to support findings as to fair market value of the real properties, the corporation's accumulated earnings and profits, or the solvency or insolvency of petitioners on April 1, 1980. Arguments of the parties based on *611 proposed findings on those subjects are therefore rejected. Such arguments do not, in any event, affect our conclusions that petitioners' debt to the corporation was not discharged in 1980. To reflect concessions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the internal Revenue Code as amended and in effect during the years in issue. ↩
2. We express no opinion on whether petitioners received taxable income in earlier years, when the advances were made, or in later years, when the debt was discharged. ↩